UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JERRY D. LINDSEY, | ) |
| Plaintiff, | ) |
| v. | ) Civ. Action No. 05-219 (RMC) |
| JOE RICE, *et al.*, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Plaintiff Jerry D. Lindsey, through appointed counsel, maintains this employment discrimination action under Title VII, 42 U.S.C. § 2000e *et seq.*, the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, and 42 U.S.C. § 1981, against Bovis Lend Lease Inc. ("Bovis") and Joe Rice in his official capacity. *See* Order of September 27, 2005 [Dkt. No. 21] (dismissing all other defendants and certain claims). Mr. Lindsey, who is black, claims that while employed by Bovis, he was "struck from behind" by Tony "Perrella," a Latino employee of Cherry Lane Electric Company, a Bovis subcontractor.[1] First Amended Complaint ¶ 13. Mr. Lindsey reported this incident to his supervisor, Joe Rice, who is white and "substantially younger" than Mr. Lindsey. *Id*. ¶ 18. Mr. Lindsey claimed that Mr. Perla acted intentionally. Mr. Rice spoke to both men and determined that the encounter was accidental. He immediately fired Mr. Lindsey.

---

[1] The employee is identified in defendants' statement of undisputed facts and discovery documents as Romulo ("Tony") Perla.

Mr. Lindsey exhausted his administrative remedies and then filed this action *pro se*. S*ee* Mem. Op. of September 27, 2005, at 1-2. Before the Court is a motion for summary judgment filed by Bovis and Mr. Rice [Dkt. No. 50]. Upon consideration of the parties' submissions and the relevant portions of the record, the Court will grant defendants' motion.

## I.  FACTUAL BACKGROUND

Bovis Lend Lease, Inc., is a project management and construction company, which from June 2003 through June 2004 served as the general contractor for a construction site at 400 Massachusetts Avenue N.W. in the District of Columbia. Def.'s Statement of Undisputed Material Facts ("Def.'s Facts") ¶¶ 2-3. Mr. Rice was Bovis' lead superintendent at the construction site during the relevant time period. In June 2003, Mr. Rice hired Mr. Lindsey at age 58 as a laborer to perform such tasks as shoveling, operating pumps and the "material hoist" (elevator), diverting traffic, removing and installing temporary fences, installing safety straps and fire extinguishers, removing trash, inventorying tools and materials, and cleaning up the site. *Id*. ¶¶ 3, 5, 6, 8. Mr. Lindsey also interacted daily with subcontractors, of which there were more than 20 with over 300 employees. *Id*. ¶ 4.

On May 12, 2004, while Mr. Lindsey was operating the material hoist, an unidentified employee of a subcontractor placed an air compressor on the hoist on or next to Mr. Lindsey's leg. *Id*. ¶¶ 15, 35. It is disputed whether (1) the employee acted intentionally and (2) whether Mr. Lindsey stopped movement of the hoist; was on the hoist; refused to move the compressor and continue working; or refused to exit the hoist until the employee moved the compressor. *Id*. ¶¶ 15-16; Plaintiff's Opp'n to Def.'s Mot. for Summ. J. and Counter Statement of Material Facts in Dispute ("Pl.'s Resp.") ¶¶ 15-16. Eventually, Mr.

Lindsey did move the compressor.  Def.'s Facts ¶ 16.  Mr. Rice removed Mr. Lindsey from operating the hoist, *id*. ¶ 17, and assigned him to clean out the garage levels of the building.  *Id*.

¶ 19.

On June 29, 2004, Mr. Lindsey accused Mr. Perla (younger and Hispanic) of assaulting him after Mr. Perla "brushed into Lindsey with a box of light fixtures."  *Id*. ¶ 24.  Mr. Lindsey called the police to report an assault but no police report was prepared or filed.  *Id*. ¶ 28.  After speaking with Mr. Perla and Mr. Lindsey about the incident, Mr. Rice concluded that the encounter was an accident, that Mr. Lindsey had overreacted, and that it was time to terminate  Mr. Lindsey's employment.  *Id*. ¶¶ 20, 22, 27.  While discussing his termination, Mr. Lindsey explained to Mr. Rice that Mr. Perla intentionally "struck him in the back from behind with a box of light fixtures for no apparent reason."  Pl.'s Resp. at 17, ¶ 10.  Mr. Lindsey was fired nonetheless.  His responsibilities were reassigned to two 50-year-old employees, one African-American and one Caucasian.  Def.'s Facts ¶ 29.

## II.  LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  This procedural device is not a "disfavored legal shortcut" but a reasoned and careful way to resolve cases fairly and expeditiously.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).  In determining whether a genuine issue of material fact exists, the Court must view all facts and reasonable inferences in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith*

*Radio*, 475 U.S. 574, 587 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994). To be "material" and "genuine," a factual dispute must be capable of affecting the substantive outcome of the case. *Anderson*, 477 U.S. at 247-48; *Laningham v. United States Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987).

In employment discrimination cases under Title VII--in the absence of direct evidence of discrimination--courts generally apply the burden-shifting scheme set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under that framework, a plaintiff must first establish a prima facie case of discrimination by a preponderance of the evidence. If the plaintiff is successful, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its conduct. "If the employer meets this burden, the presumption of intentional discrimination disappears, but the plaintiff can still prove disparate treatment by, for instance, offering evidence demonstrating that the employer's explanation is pretextual." *Raytheon Co. v. Hernandez*, 540 U.S. 44 (2003); *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507-08 (1993). To "survive summary judgment[,] the plaintiff must show that a reasonable jury could conclude from all of the evidence that the adverse employment decision was made for a discriminatory reason." *Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007) (quoting *Lathram v. Snow*, 336 F.3d 1085, 1088 (D.C. Cir. 2003) (other citation and internal quotation marks omitted)). "[C]ourts are without authority to "'second-guess an employer's personnel decision absent demonstrably discriminatory motive.'" *Waterhouse v. District of Columbia*, 298 F.3d 989, 995 (D.C. Cir. 2002) (quoting *Fischbach v. District of Columbia Dep't of Corr.,* 86 F.3d 1180, 1182 (D.C. Cir. 1996) (other citation omitted).

### III.  DISCUSSION

Bovis asserts that Mr. Lindsey cannot sustain a claim of discrimination against Mr. Rice in his individual capacity, but this issue is moot because the individual-capacity claim against Mr. Rice was dismissed by Order of September 27, 2005.[2]  Bovis next contends that Mr. Lindsey cannot establish a prima facie case of discrimination and that even if he did, Mr. Lindsey has no evidence to support a finding that the legitimate, nondiscriminatory reason given for his termination was a pretext for intentional discrimination.  Because Bovis has provided a non-discriminatory basis for Mr. Lindsey's termination, whether a prima facie case has been established is no longer relevant.  *Czekalski*, 475 F.3d at 364.  Rather, Mr. Lindsey's prima facie case becomes part of the evidence to be considered in determining whether there is a triable issue on the discrimination charge.  *Id*. (citing *George v. Leavitt*, 407 F.3d 405, 413 (D.C. Cir. 2005)).  "[B]are allegations of discrimination are insufficient to defeat a properly supported motion for summary judgment."  *Burke v. Gould*, 286 F.3d 513, 521 (D.C. Cir. 2002).

A prima facie case of discriminatory termination is satisfied by showing the following: (1) the plaintiff is a member of a protected class, (2) the plaintiff suffered an adverse employment action, and (3) the plaintiff's discharge gave rise to an inference of discrimination.  *George*, 407 F.3d at 413.  That Mr. Lindsey belonged to protected classes (African American and over age 40) and suffered an adverse employment action (termination) are undisputed.  Here, the Court must decide whether Mr. Lindsey has sufficiently rebutted Bovis' evidence establishing a legitimate, nondiscriminatory reason for his termination to

---

[2]  Because the official-capacity claim against Mr. Rice is in essence against the corporation, the Court hereafter refers to the defendant only as Bovis.

proceed to trial on the pretext claim.

As documented by Mr. Rice's deposition, Mr. Lindsey was fired for being "[u]nable to work with others - Bovis employees & subcontractors (argumentative and intimidating)," unwilling to "take suggestions/requests from others" and "insist[ing] on doing tasks his way, despite orders from superiors." Def.'s Mot., Ex. B (Deposition of Joseph Rice), Transcript at 46-7, Depo. Ex. 1. According to Mr. Rice, the incident with Mr. Perla was not the sole basis for the decision but rather "was the straw that broke the camel's back." Rice Tr. at 47; *see id.* at 23-25, 27-41 (recounting prior complaints about Mr. Lindsey's behavior and job performance). Mr. Lindsey denies that he behaved in the manner described, but the Court may not decide the correctness or fairness of ordinary personnel decisions absent a demonstrably discriminatory motive. *Fischbach,* 86 F.3d at 1182-83.

Mr. Lindsey admits that he never heard Mr. Rice refer negatively to anyone's race, color or age, that he was never told by anyone that his termination was based on such classifications, and that he has no independent documentation even suggesting such was the case. *See* Pl.'s Resp. ¶¶ 30, 45. He asserts nevertheless that reasonable jurors could find discriminatory animus from his testimony about (1) Mr. Rice's disbelief of his account of the encounter with Mr. Perla and his firing immediately thereafter, (2) Mr. Rice's failure to investigate his report of a similar bumping incident in May 2004 involving another younger employee (Denny Douglas) of a subcontractor, (3) Mr. Rice's failure to investigate his report of another employee of a subcontractor having almost injured an African American Bovis employee when part of a construction fence was knocked down, and (4) Mr. Rice's "disrespectful attitudes toward another black employee [by] calling that employee by a derogatory nickname 'Rabbit' rather than [by] his real name." Pl.'s Mem. at 5 (citing Mr.

Lindsey's declaration and deposition testimony).[3]

Mr. Lindsey's self-serving statements are too conclusory to survive Bovis' summary judgment motion. He attributes Mr. Rice's alleged discriminatory attitude to nothing more than his belief derived solely from the fact that he was of a different race and age than Mr. Perla and Mr. Rice. *See* Pl.'s Mem. of Law in Opp'n to the Def.'s Mot. for Summ. J., Ex. 2 (Deposition of Jerry DuVall Lindsey), Transcript at 113-17, 154-56; Am. Compl. ¶ 18. And, as to the third and fourth incidents, Mr. Lindsey has not proffered corroborating statements from the subjects of--or witnesses to--those events. Assuming the truth of the allegations, the third incident is too vague to infer racial discrimination and the fourth incident provides no basis for drawing such an inference in the absence of any evidence that Rabbit is a *racially* derogatory nickname.

When presented with Mr. Lindsey's unsubstantiated belief of discrimination against Bovis' factually supported reasons for the termination and its evidence establishing (1) Mr. Rice's hiring of Mr. Lindsey at age 58 and (2) Mr. Rice's reassignment of Mr. Lindsey's former job responsibilities to two 50-year-old men, one of whom is also African American, the Court concludes that no reasonable juror could find for Mr. Lindsey on his discrimination claim.

---

[3] Mr. Lindsey also alleges that another supervisor, Dick Ward, would not allow him to do his job by signing papers certifying his inspection of fire extinguishers, but there is no indication in the record that this alleged incident or Mr. Ward contributed in any way to Mr. Lindsey's termination. The Court therefore does not find these facts to be significantly probative of the claim.

## IV.  CONCLUSION

Mr. Lindsey has provided no credible evidence from which a reasonable juror would infer that his firing was motivated by his race, color or age.  Having articulated legitimate, non-discriminatory reasons for the job termination, Bovis is entitled to judgment as a matter of law.  A memorializing order accompanies this Memorandum Opinion.

|  |  |
|---|---|
| Date: December 13, 2007 | /s/<br>ROSEMARY M. COLLYER<br>United States District Judge |